UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RACHEL LYNN DEAN,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

Defendant.

CASE NO. 13-cv-05369 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 12, 15, 16).

After considering and reviewing the record, the Court finds that the ALJ failed to evaluate properly the medical evidence. Importantly, the ALJ neglected to include

significant and probative evidence from his review of doctors' mental status examinations. Plaintiff's limitations resulting from mental impairments require further evaluation, especially her limitations with respect to concentration, persistence and pace.

Therefore, this matter shall be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

## BACKGROUND

Plaintiff, RACHEL LYNN DEAN, was born in 1974 and was 32 years old on the alleged date of disability onset of July 29, 2007 (*see* Tr. 132, 135). Plaintiff graduated from high school and started college but quit when she was divorced (Tr. 41). She worked as a real estate assistant and obtained her real estate license. She was terminated from that job because she was unable to work 40 hours a week (Tr. 40-42). Plaintiff's last job was part-time at a smoothie bar, but she was fired for missing too much work (Tr. 39).

Plaintiff has at least the severe impairments of "mild degenerative disk disease of the cervical spine and history of carpal tunnel syndrome, status post surgery (20 CFR 404.1520(c) and 416.920(c))" (Tr. 15).

At the time of the hearing, plaintiff was living with her two children.

## PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 132-34, 135-40). The applications were denied initially and following reconsideration (Tr. 66, 67). Plaintiff's

requested hearing was held before Administrative Law Judge Timothy Mangrum ("the ALJ") on August 4, 2011 (*see* Tr. 32-65). On August 26, 2011, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 10-30).

On March 12, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in May, 2013 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on July 30, 2013 (*see* ECF Nos. 9, 10).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ erred by finding that the plaintiff's mental impairments are "nonsevere" and by failing to properly assess and weigh the opinions of an examining psychologist, examining psychiatrist and two state agency psychological consultants; (2) Whether or not the ALJ erred in assessing the plaintiff's credibility; and (3) Whether or not the ALJ erred in assessing the opinions of the examining and treating physicians and thus erred in assessing the plaintiff's physical RFC (*see* ECF No. 12, pp. 1-2).

## STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to

engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes*, *supra*, 881 F.2d at 750).

In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009).

## DISCUSSION

**(1) Whether or not the ALJ erred by finding that plaintiff's mental impairments are "nonsevere" and by failing to properly assess the medical evidence.**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist.

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion can be rejected only "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). But, the Acting Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

**(a) Dr. Anita Peterson, Ph.D., non-examining doctor**

Dr. Peterson reviewed the record and opined that plaintiff could "perform some complex tasks and may have mild social limitations" (Tr. 350). She also opined that

plaintiff's "performance may be inconsistent and limit her to [part time] work" (*id.*). Regarding specific functional work related limitations, Dr. Peterson opined that: "[Plaintiff] can persist at some detailed tasks for extended periods on a regular basis; performance is inconsistent but within acceptable standards; [and,] CPP [concentration, persistence and pace] is intermittently interrupted by pain" (*id.*).

The ALJ rejected Dr. Peterson's opinions that plaintiff "had moderate limitations in concentration, persistence and pace" on the basis that they were "inconsistent with the totality of the record including the mental exam results discussed above" (*see* Tr. 17). However, the ALJ's discussion of the mental status examination ("MSE") results does not support the rejection of these opinions from Dr. Peterson. *See Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

When discussing the MSE conducted by Dr. Scott Gibson, M.D. prior to the discussion of Dr. Peterson's opinion, the ALJ referenced Dr. Gibson's indication that plaintiff performed serial 7's with several mathematical errors (*see* Tr. 345). Although the ALJ also noted Dr. Gibson's indication that plaintiff was "able to recite the months of the year backwards" (*see* Tr. 17), the Court finds persuasive plaintiff's argument that an inability "to perform serial sevens suggest attentional impairment in a well-educated subject, even if she can accurately perform easier tasks . . . . [and, thus], the clinical findings such as the concentration portion of the mental status exam are actually supportive of Dr. Gibson's opinion that the claimant would have limited ability to be consistent in her work performance" (*see* Opening Brief, ECF No. 12, p. 6 (*citing* Tr. 23-

24; Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 128 (Oxford University Press 1993))). As noted by plaintiff, Dr. Gibson opined based on his examination that plaintiff's "work ability at this time may be limited to 10-15 hours per week" and that she might be an "irregular employee [with] limit[ed] ability to be consistent in her work performance" (*see* Tr. 347).

The ALJ's discussion of the medical opinion and MSE results of Dr. Gibson does not discredit the medical opinion of Dr. Peterson that plaintiff had moderate limitations in concentration, persistence and pace.

Similarly, the MSE results discussed by the ALJ from Dr. Katrina Higgins, Ph.D., discussed briefly by the Court below, *see infra*, section 1.c, also do not support the ALJ's rejection of the medical opinions of Dr. Peterson. The ALJ's summary of Dr. Higgins' MSE results omits significant, probative evidence regarding plaintiff's memory results, *see infra*, section 1.c. (*see also* Tr. 17, 447). *See Vincent*, *supra*, 739 F.2d at 1394-95.

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick*, *supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (*quoting Lebus v. Harris*, 526 F.Supp. 56,

60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)).

The MSE generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4).

Based on the relevant record, and for the stated reasons, the Court concludes that the ALJ's finding that Dr. Peterson's opinion regarding plaintiff's moderate limitations in concentration, persistence and pace was "inconsistent with the totality of the record including the mental exam results" of Drs. Gibson and Higgins (*see* Tr. 17) is not supported by substantial evidence in the record as a whole.

The ALJ appears to reject the opinion from Dr. Peterson, in part, due to plaintiff's failure to seek treatment and the lack of reported mental health symptoms, however, "'it is a questionable practice to chastise one with a mental impairment for the exercise of

poor judgment in seeking rehabilitation.'" *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (*quoting* with approval, *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). It is an even more questionable practice to discredit a medical opinion on this basis. *Id.*

According to the Ninth Circuit, "the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [a physician's] assessment of claimant's condition is inaccurate." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). The court noted that "it is common knowledge that depression is one of the most underreported illnesses in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness." *Id.* (citation omitted); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Similarly, the ALJ found elsewhere in his written decision that plaintiff's mental health complaints should not be credited because plaintiff visited only a pain psychologist; and received mental health "medication management by her primary care provider, [but] [] admitted at the hearing she lacked any formal mental health treatment" (Tr. 16). Contrary to the ALJ's assertion, "medication management" by a primary care provider, including the prescribing of psychotropic medication for depression and anxiety, as opposed to by a mental health specialist, still is formal mental health treatment, and is not a proper basis to discredit a claimant's complaints or a doctor's opinions of limitations. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)); *see also* 20 C.F.R. 404.1527(c)(5).

A doctor does not have to be a specialist in mental health in order to provide a medical opinion regarding mental health limitations, although area of specialty is a relevant factor to be considered. *See Sprague, supra*, 812 F.2d at 1232; *see also* 20 C.F.R. 404.1527(c)(5). The Ninth Circuit specifically has indicated that "it is well established primary care physicians (those in family or general practice) 'identify and treat the majority of Americans' psychiatric disorders.'" *See Sprague, supra*, 812 F.2d at 1232 (*citing* C. Tracy Orleans, Ph.D., Linda K. George, Ph.D., Jeffrey L. Houpt, M.D. and Keith H. Brodie, M.D., *How Primary Care Physicians Treat Psychiatric Disorders: A National Survey of Family Practitioners*, 142 Am. J. Psychiatry 52 (Jan. 1985)). As indicated by the Ninth Circuit, "[i]f the Magistrate [Judge]'s conclusion that there was no psychiatric evidence is based on an assumption that such evidence must be offered by a Board-certified psychiatrist, it is clearly erroneous." *Sprague, supra*, 812 F.2d at 1232.

In addition, the Court notes that Dr. Peterson was a state agency medical consultant, with relevant expertise. According to Social Security Ruling 96-6p, state agency medical consultants, while not examining doctors, "are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996 LEXIS 3 at *4.

The Court concludes that the ALJ erred when evaluating the opinion of Dr. Peterson, who opined that plaintiff suffered from moderate limitations in her ability to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek

without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (*see* Tr. 348-49). She also specified that plaintiff would have intermittent interruptions in her concentration, persistence and pace (*see* Tr. 350). All of these observations conflict with the ALJ's determination that plaintiff had only "mild limitations" in concentration, persistence and pace (Tr. 16) and did not suffer from any severe mental impairment (*see* Tr. 17).

Defendant contends that, "[in] large part, Dr. Peterson's opinion does not conflict with the ALJ's assessment" (*see* Response, ECF No. 15, p. 10). According to defendant, [if] anything, Dr. Peterson's narrative opinion is aligned with the residual functional capacity ["RFC"] assessment" (*id.*, pp. 11-12 (*citing* Tr. 18, 350)). However, Dr. Peterson's opinion that plaintiff's concentration, persistence and pace are "intermittently interrupted by pain" is not included in plaintiff's RFC, and was not included in the hypothetical example presented to the vocational expert ("VE"), on whose testimony the ALJ relied when making the steps 4 and 5 findings upon which the ultimate determination of non disability was founded. Therefore, the Court does not agree with defendant's contention that "any error in the evaluation of [Dr. Peterson's] opinion is inconsequential to the ultimate disability determination and harmless" (*id.*, p. 12 (*citing Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012))).

Based on the relevant record and for the stated reasons, the Court concludes that the ALJ has not provided specific and legitimate reasons for failing to credit fully the opinion of Dr. Peterson, and this is not harmless error. Plaintiff's limitations resulting

from mental impairments require further evaluation, especially her limitations with respect to concentration, persistence and pace. Therefore, this matter is reversed and remanded for further consideration of the medical opinion of Dr. Peterson.

**(b) Dr. Dan Donahue, Ph.D., non-examining doctor**

On August 30, 2010, Dr. Donahue evaluated the record and provided his opinion regarding plaintiff's functional work related limitations (*see* Tr. 464-67). He opined that plaintiff could understand and remember one to three step tasks (*see* Tr. 466). He also opined as follows:

> [Plaintiff] is capable of [concentration, persistence and pace] through 1-3 steps tasks, she will have difficulty maintaining concentration for extended periods of time and completing a [normal] workday/week [due to] her focus on chronic pain which leads to symptoms of depression and anxiety, but she can persist the majority of the time"

(*id.*).

The ALJ failed to discuss the opinion of Dr. Donahue, committing legal error. Defendant argues that it was harmless error (*see* ECF No. 15, pp. 12-13). However, the Court notes that Dr. Donahue's opinion supports the opinion from Dr. Peterson, which was rejected improperly by the ALJ, *see supra*, section 1. It is possible that acknowledgement and review of the opinion of Dr. Donahue would have affected the ALJ's rejection of similar opinions from Dr. Peterson. In addition, Dr. Donahue also was a state agency medical consultant, with relevant expertise.

According to Social Security Ruling 96-6p, ("SSR96-6p") the ALJ is "required to consider as opinion evidence" medical opinions from state agency medical consultants and also is "required to explain in his decision the weight given to such opinions."

*Sawyer v. Astrue*, 303 Fed. Appx. 453, *455, 2008 U.S. App. LEXIS 27247 at **2-**3 (9th Cir. 2008) (*citing* 20 C.F.R. § 416.927(f)(2)(i)-(ii); SSR 96-6p, 1996 SSR LEXIS 3, *5) (memorandum opinion) (unpublished opinion). According to SSR 96-6p, "[a]dministrative law judges . . . . may not ignore the[] opinions [of state agency medical and psychological consultants] and must explain the weight given to the opinions in their decisions." SSR 96-6p, 1996 SSR LEXIS 3, 1996 WL 374180 at *2.

This, the ALJ failed to do.

The Court already has concluded that the ALJ committed error requiring reversal when evaluating the opinion of Dr. Peterson, *see supra*, section 1. In addition, the ALJ erred by not evaluating explicitly the opinion of Dr. Donahue, who opined, similarly to Dr. Peterson, that plaintiff suffered from moderate limitations in her ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (*see* Tr. 464-65). He also opined specifically that she would "have difficulty maintaining concentration for extended periods of time and completing a normal workday/week," although she could persist for the majority of the time (*see* Tr. 466). These observations conflict with the ALJ's determination that plaintiff had only "mild limitations" in concentration, persistence and pace (Tr. 16) and did not suffer from any severe mental impairment (*see* Tr. 17).

Because the ALJ's findings conflict with those of Dr. Donohue, and because the ALJ failed to include any limitations as a result of mental impairment into plaintiff's RFC, the failure by the ALJ to address the medical opinion of Dr. Donohue is not harmless error. *See Molina*, *supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009). As found already by the Court, plaintiff's limitations from her mental impairments require further evaluation.

**(c) Dr. Katrina L. Higgins, Psy.D., examining doctor**

Dr. Higgins examined plaintiff and conducted a mental status examination ("MSE") on August 19, 2010 (Tr. 445-48). The Court agrees with plaintiff's contention that the ALJ failed to describe accurately the MSE results from Dr. Higgins (*see* Opening Brief, ECF No. 12, pp. 10-12). Dr. Higgins' opinion includes the following:

> Ms. Dean reports moderate short-term memory loss. She could not recall what she had eaten for breakfast the day before the evaluation and struggled to remember 2 of 3 common objects after five minutes. She displayed mild difficulty with long term memory, struggling to recall dates of significant life events.

(Tr. 447). The ALJ's summary includes that plaintiff "displayed only mild difficulty with long-term memory, recalled 2/3 objects after a 5-minute delay . . . . " (*see* Tr. 17 (*citing* Tr. 447).

Based on the record as a whole, the Court concludes that the ALJ erred in evaluating the opinion of Dr. Higgins. The medical opinion of Dr. Higgins should be evaluated anew following remand of this matter.

The Court will not discuss the remainder of plaintiff's contentions regarding the medical evidence, but concludes that all of the medical evidence should be evaluated anew following remand of this matter.

**(2) Whether or not the ALJ erred in assessing the plaintiff's credibility.**

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, although the ALJ provided multiple reasons for failing to credit fully plaintiff's credibility, plaintiff's allegations and credibility should be assessed anew following remand of this matter. *See id.*

**(3) Whether or not the ALJ erred in assessing the opinions of the examining and treating physicians and thus erred in assessing the plaintiff's physical RFC?**

Here, plaintiff complains that the ALJ erred in evaluating the opinion of her treating physician regarding her physical complaints. The ALJ relied in part on plaintiff's credibility when failing to credit fully opinions from treating physician, Dr. Michael Butler, M.D., as well as when failing to credit fully opinions from Dr. Raymond West, M.D. (*see* Tr. 22-23). As plaintiff's credibility must be assessed anew, so must the medical opinions of Drs. Butler and West.

CONCLUSION

The ALJ erred in evaluating the medical evidence provided by Drs. Peterson, Donohue and Higgins. Plaintiff's limitations resulting from her mental impairments must be assessed anew. As a result, the remainder of the medical evidence, as well as plaintiff's credibility, must be assessed anew.

Based on the stated reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 7th day of April, 2014.

J. Richard Creatura
United States Magistrate Judge